UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| TERRY MARSHALL | * | CIVIL ACTION NO. 13-0876 |
|---|---|---|
| VERSUS | * | JUDGE ROBERT G. JAMES |
| ARCHIE SMITH, ET AL. | * | MAG. JUDGE KAREN L. HAYES |

<u>REPORT AND RECOMMENDATION</u>

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss for lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(2), or alternatively to transfer pursuant to 28 U.S.C. § 1404(a) [doc. # 4] filed by Defendants Archie Smith, Big Arch Auto, and North Texas Auto Group, Inc. d/b/a Addison Auto Group. For reasons stated below, it is recommended that the hybrid motion be DENIED.

<u>Procedural History</u>

On April 29, 2013, Plaintiff Terry Marshall filed the instant suit for damages, declaratory, and injunctive relief under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, et seq.; the "Equal Credit Opportunity" provisions of the Federal Consumer Credit Protection Act, 15 U.S.C. § 1691, et seq. ("ECOA"); the Texas Debt Collection Act ("TDCA"); and the Texas Deceptive Trade Practices Act ("TDTPA") against Defendants, Archie Smith; North Texas Auto Group, Inc. d/b/a Addison Auto Group; and Big Arch Auto. (Compl. & 1st Amend. Compl.). The instant suit is the unfortunate byproduct of Marshall's ill-fated purchase of a 2006 BMW 3 Series automobile from Defendants. Marshall contends that Defendants are responsible for various errors in the terms and disclosures set forth in the retail installment contracts. He further faults

Defendants for failure to title and register the vehicle in Marshall's name or to provide him with the key to permit him to remove his tire when it developed a flat.  As a result, Plaintiff missed work, lost his job, and thereafter, no longer could make his car payments.  Defendant Smith allegedly harrassed Plaintiff concerning the missed payments.  In the end, however, Defendants caused the car to be repossessed.

On September 9, 2013, at 5:14 p.m., Defendant, North Texas Auto Group, Inc. d/b/a Addison Auto Group ("Addison") filed its answer to the complaint.  (Answer [doc. # 3]).  One minute later, Addison, Smith, and Big Arch Auto ("Big Arch") filed the instant motion to dismiss for lack of *in personam* jurisdiction, or alternatively, to transfer this matter to the United States District Court for the Northern District of Texas.

On October 1, 2013, Plaintiff filed his opposition to Defendants' hybrid motion, together with a motion for leave to amend his complaint to allege facts to support Defendants' activities in Louisiana.  After the applicable delay lapsed, the court granted Plaintiff's motion as superfluous and unopposed.  *See* October 31, 2013, Order [doc. # 17].  On November 27, 2013, Addison filed a "response" to Plaintiff's First Amended Complaint.  *See* Response [doc. # 19].  The instant motion to dismiss or alternatively to transfer is ripe.

## Law and Analysis

### I.      Personal Jurisdiction

#### a)      Addison Waived its Objection to *In Personam* Jurisdiction

Pursuant to Rule 12(h)(1) of the Federal Rules of Civil Procedure, a defendant waives his right to challenge personal jurisdiction when he fails to raise the issue in his *first* responsive pleading, i.e. in a Rule 12(b) motion or an answer.  *Hunter v. Serv-Tech, Inc.*, Civ. Action No.

07-9009, 2009 WL 2858089 (E.D. La. Aug. 28, 2009) (citing *Kersh v. Derozier,* 851 F.2d 1509,

1511–12 (5th Cir.1988); *Golden v. Cox Furniture Mfg .,* 683 F.2d 115, 118 (5th Cir.1982); *T & R*

*Enters., Inc. v. Continental Grain Co.,* 613 F.2d 1272, 1277 (5th Cir.1980)).  In this case,

Addison filed an answer that did not question or otherwise reserve its right to challenge personal

jurisdiction.  Although Addison joined in the motion to dismiss for lack of personal jurisdiction

one minute after it made a general appearance in the matter, by then it was too late.  Addison's

prior and unqualified initial responsive pleading waived its right to contest personal jurisdiction

in a subsequent motion.[1]

   b)  <u>Defendants' Contacts with the Forum State Suffice to Confer Specific Jurisdiction</u>

    1) Minimum Contacts

  In a federal question case where the federal statute at issue does not authorize nationwide

service of process,[2] a court may assert personal jurisdiction to the extent "reached by the

long-arm statute of the state in which the district court sits."  *Point Landing, Inc. v. Omni Capital*

*Intern., Ltd.*, 795 F.2d 415, 427 (5th Cir. 1986); *see also Tempur-Pedic Intern., Inc. v. Go*

*Satellite Inc.*, 758 F. Supp. 2d 366, 371 (N.D. Tex. 2010).  Louisiana's long-arm statute extends

jurisdiction to the full limits of the Constitution.  La. Rev. Stat. Ann. § 13:3201(B).

Accordingly, the sole issue here is whether exercising *in personam* jurisdiction over the non-

resident defendants comports with federal due process.

  For personal jurisdiction to satisfy due process requirements, the plaintiff must establish

---

   [1]  Addison also did not question or otherwise reserve its right to question personal
jurisdiction in its response to the amended complaint.

   [2]  Neither side contends that the TILA or the ECOA so provide.

that "(1) the defendant purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Moncrief Oil Intern., Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) (citations omitted).

The "minimum contacts" prong divides contacts into those that give rise to general jurisdiction and those that give rise to specific jurisdiction. *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 343 (5th Cir. 2004).  General jurisdiction may be exercised when a defendant's contacts with the forum state are "continuous and systematic," regardless of whether the action is related to the forum contacts. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271(5th Cir. 2006) (citations omitted).  Specific jurisdiction applies where the non-resident defendant has relatively few contacts with the forum state, but the suit arises out of or is related to the defendant's contacts with the forum. *Id.*  (citations omitted).  "A court may exercise specific jurisdiction when (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendants [sic] contacts with the forum state." *Freudensprung, supra* (citations omitted).

Finally, when the court resolves a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, plaintiff need only make a prima facie showing of the jurisdictional facts. *Freudensprung, supra*.  All uncontroverted allegations in the complaint are taken as true and fact conflicts are resolved in the plaintiff's favor. *Lewis v. Fresne*, 252 F.3d 352, 356 (5th Cir. 2001) (citation omitted).  However, the court is not required to credit

4

conclusory allegations, even if uncontroverted.  *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (citations omitted).

       2)    Facts

Defendants contend that Plaintiff's complaint did not include any factual allegations to establish that they engaged in, or sought out business in the State of Louisiana.  Of course, Plaintiff amended his complaint in an effort to redress this alleged deficiency.[3]  He also submitted his own affidavit.  (Marshall Affidavit; Pl. Opp., Exh.).  Although Plaintiff acknowledged that he, not Defendants, initiated contact for purposes of purchasing the subject car, Defendants sent the associated retail installment contracts to Marshall in Louisiana and he signed them in Louisiana as well.  *Id.*  At that time, Addison was the owner of the vehicle, and Smith signed the retail installment contract as an employee of Addison.  (1st Amend. Compl., ¶¶ 11, 13).  Defendants delivered the automobile to Plaintiff in Louisiana.  *Id.*

On April 27, 2012, Smith, acting on behalf of Addison and Big Arch, presented  a second retail installment for the purchase and finance of the subject automobile to Marshall for his approval and signature in Louisiana.  (1st Amend. Compl., ¶ 17).  The agreement required 42 monthly payments to be paid to Big Arch or deposited into a Capital One checking account.  *Id.*, ¶ 20.  Although the agreement included charges for registration and licensing, Defendants never remitted these fees to Louisiana to register the car in Marshall's name because Defendants

---

    [3]  "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*,  31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir.1985)).  Here, the amended complaint neither refers to, nor adopts any earlier pleadings in this matter; thus, for purposes of the instant motion, the sole complaint before the court is the amended complaint.

ultimately denied financing to Marshall under the April 27, 2012, agreement, and instead titled the car in Smith's name.  *Id.*, ¶¶ 21-22, 30, 38.  Defendants, however, failed to provide Marshall with written notice that he had been denied credit as required by the ECOA.  *Id.*, ¶ 39. Thereafter, Marshall made payments to Big Arch in accordance with "handwritten notes" provided to Marshall by Smith.  *Id.*, ¶ 23.

This arrangement continued in effect until one day Marshall experienced a flat tire in his new car that he could not repair because Defendants never provided him with the key to unlock the tire.  *Id.*, ¶ 24.  As a result, Marshall missed work that day, and was fired.  *Id.*  After he lost his job, Marshall did not maintain his car payments.  *Id.*, ¶ 25.  Marshall's non-payment prompted Smith to telephone Marshall in Louisiana where he left threatening, profanity-laced messages on Marshall's answering machine concerning the missed car payments.  *Id.*  In October 2012, Defendants caused someone to go to Marshall's home in Louisiana and repossess the car. *Id.*, ¶ 26.

3)   ANALYSIS

Defendants' contacts with Louisiana are related to this suit, and derive, at least in part, from a series of retail installment agreements executed in this state.  "Although a single act by the defendant directed at the forum state can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted, entering into a contract with an out-of-state party, without more, is not sufficient to establish minimum contacts."  *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (citations omitted).  Here, however, there is more.  Defendants sent at least *two* agreements to Louisiana for Plaintiff's execution in this state.  Moreover, they delivered the

vehicle in this state.  They also entered into an ongoing agreement with Plaintiff that required

monthly payments to Defendants for a period of some 42 months.  In other words, Defendants

deliberately reached out with the intent to forge an enduring relationship with a Louisiana

consumer.  *See Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 382 (5th Cir.

2003).  In light of the foregoing contacts, Defendants should reasonably have anticipated being

haled into court in this state when the ongoing arrangement dissolved.

Further, this case entails more than just a contract claim, it also includes allegations that

Defendants intentionally omitted or misrepresented material information relative to the

agreement(s).  A defendant's transmission of a written document to the forum state that contains

material misrepresentations relied upon by the plaintiff suffices to establish the defendant's

minimum contacts with the forum state.  *See Gen. Retail Servs., Inc. v. Wireless Toyz Franchise,*

*LLC*, 255 F. App'x 775, 794 (5th Cir. 2007) (citation omitted) (unpubl.).  Indeed, "[w]hen the

actual content of communications with a forum gives rise to intentional tort causes of action, this

alone constitutes purposeful availment."  *Lewis*, 252 F.3d at 359 (citing *Wien Air Alaska, Inc. v.*

*Brandt,* 195 F.3d 208, 213 (5th Cir.1999)).  Here, Plaintiff asserts a claim under the Texas Fair

Debt Collection Act which is based on tort law.  *Leto v. World Sav. & Loan Ass'n*, Civ. Action

No. 98-0261, 1998 WL 1784221, *4 n37 (W.D. Tex. Sept. 29, 1998).  Although the tortious

"effects" test derived from *Calder v. Jones,* 465 U.S. 783, 789, 104 S.Ct. 1482 (1984) is not

alone sufficient to demonstrate purposeful availment,[4] the instant Defendants' contacts with

Louisiana are neither accidental, nor fortuitous.  The court reiterates that Defendants confected

---

[4]  *See Panda Brandywine Corp., supra*.

an agreement(s) with a resident of this forum to sell him a car that they delivered here, subject to terms that created an extended payment relationship with the forum resident.  In fact, according to the complaint, Defendants retained title of the car in Smith's name.  When the relationship soured, Defendants verbally coerced Plaintiff via telephone in Louisiana, and ultimately caused his car to be repossessed in this state.  In sum, Defendants purposefully availed themselves of the privilege of conducting activities within the forum state.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985).[5]

       c)       <u>Assertion of Jurisdiction is not Unfair</u>

Once minimum contacts have been established, the defendant must make a compelling case that it would be unreasonable to exercise jurisdiction.  *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (citing *Burger King, supra*).  Defendants rarely meet this burden, however.  *Wien Air Alaska, Inc., supra*.  To determine whether the exercise of jurisdiction is fair and reasonable, the court must balance

> (1) the burden on the nonresident defendant of having to defend itself in the forum; (2) the interests of the forum state in the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the states in furthering fundamental social policies.

*Central Freight Lines, Inc., supra* (citations omitted).

Defendants' memorandum did not address the foregoing considerations.  To the extent that Defendants' omission is not dispositive per se, the court observes that the factors support the

---

[5]  The court notes that Plaintiff attributes most of Defendants' contacts with Louisiana to Defendant Smith.  However, Plaintiff further alleged that Defendant Big Arch is a partnership that is owned or controlled by Smith and Addison.  (Amend. Compl., ¶ 7).  Thus, the actions of Smith and Addison may be imputed to Big Arch for purposes of establishing minimum contacts. *Lewis, supra* (citing *Sher v. Johnson*, 911 F.2d 1357, 1366 (9th Cir. 1990)).

exercise of jurisdiction.  The burden of requiring Defendants to defend this case in Louisiana is

no greater than the burden faced by Plaintiff if he were required to litigate this matter in Texas.

*Central Freight Lines, Inc., supra*.  Additionally, Louisiana has a strong interest in protecting its

citizens from tortious actions.  Plaintiff joined Defendants in one suit.  It would prove far more

inconvenient with the possibility of inconsistent judgments if Plaintiff were required to initiate a

separate suit against some Defendants in Texas.[6]  Judicial efficiency and economy dictate that the

interrelated claims against all defendants be decided in the same suit.  Finally, all states enjoy a

shared interest in ensuring that parties injured by the tortious conduct of out of state actors are

not themselves forced to cross state lines to obtain redress.  *See Wien Air Alaska, Inc., supra;*

*Lewis supra* (forum state had significant and dispositive interest in the matter because the injured

party was a resident of the forum state).

## II.    Transfer for the Convenience of the Parties and Witnesses

Defendants alternatively seek to transfer this matter to the United States District Court for

the Northern District of Texas pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the

convenience of parties and witnesses, in the interest of justice, a district court may transfer any

civil action to any other district or division where it might have been brought or to any district or

division to which all parties have consented."  28 U.S.C. § 1404(a).  The statute is "intended to

place discretion in the district court to adjudicate motions for transfer according to an

individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v.*

*Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 2243 (1988) (citation and internal quotation

---

[6]  Recall that Defendant Addison waived any objection to personal jurisdiction.  *See* discussion, *supra*.

9

marks omitted).  "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) (en banc) (*Volkswagen II*) (citations omitted).

The threshold inquiry under § 1404(a), at least historically,[7] is whether a civil action "might have been brought" in the destination venue.  *Volkswagen II*, 545 F.3d at 312-313.  Here, it is not contested that this matter could have been brought in the Northern District of Texas.[8]  Thus, the issue becomes whether Defendants may establish "good cause" for the transfer. *Volkswagen II, supra* (citation omitted).  To establish "good cause," the moving party must demonstrate that the transferee venue is "clearly more convenient" than the venue initially selected by the plaintiff.  *Id*.

To make this determination, the court considers a number of "not necessarily exhaustive or exclusive" private and public interest factors.  *Volkswagen II*, 545 F.3d at 315.  The private interest factors include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Id*.  (citations omitted).  The public interest factors are:  "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests

---

[7]  The Federal Courts Jurisdiction and Venue Clarification Act of 2011 expanded § 1404(a) to permit the parties to transfer the action to any district where they consented (in addition to any district where the action might have been brought).

[8]  Furthermore, Defendants do not seriously contest that venue is proper in this court.  28 U.S.C. § 1391(b)(2).  If they did, they would have filed a motion to dismiss under Rule 12(b)(3) or a motion to transfer under 28 U.S.C. § 1406(a).

decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4)

the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."

*Id.*

       With these precepts established, the court will address the relevant considerations,

seriatim.

       a)     <u>Private Interest Factors</u>

            1)     RELATIVE EASE OF ACCESS TO SOURCES OF PROOF

       Defendants did not address this factor.  Plaintiff stated in conclusory fashion that sources

of proof will be in both states.  The court finds that this factor remains neutral.  *See Sivertson v.*

*Clinton*, Civ. Action No. 11-0836, 2011 WL 4100958 (N.D. Tex. Sept. 14, 2011) (citation

omitted) (factor remained neutral where movant failed to "identify any specific proof, or even

categories of proof" located in transferee forum).

            2)     AVAILABILITY OF COMPULSORY PROCESS TO SECURE THE ATTENDANCE OF
                 WITNESSES

       Defendants contend that certain witnesses are beyond the process of the court, and remain

unwilling or reticent to attend trial.  However, Defendants did not identify these unwilling

witnesses, or explain their expected testimony at trial.  While Defendants are not required to

submit affidavits, *see In re Volkswagen, II, supra*, they do need to provide the court with some

context to support their otherwise bald assertions.  Defendants' omission renders this factor

neutral.  *Sivertson, supra*; *Dymatize Enterprises, Inc. v. Maximum Human Performance, Inc.*,

Civ. Action No. 09-1840, 2010 WL 972240 (N.D. Tex. Feb. 28, 2010) *report and*

*recommendation adopted,* 2010 WL 980996 (N.D. Tex. Mar. 16, 2010).[9]

3)  COST OF ATTENDANCE FOR WILLING WITNESSES

Defendants argue that if this suit remains here, its witnesses will have to travel over 250 miles, remain absent from home and work for an extended period of time, plus incur concomitant room and board expenses.  Plaintiff maintains that he would experience similar hardship if this matter were transferred.

The court again emphasizes, however, that when, as here, "the moving party merely has made a general allegation that necessary witnesses are located in the transferee forum, without identifying them and providing sufficient information to permit the district court to determine what and how important their testimony will be, the motion to transfer should be denied."  15 Charles A. Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 3851 (4th ed. 2013).  The movants' failure to identify their key witnesses compels the court to find that this factor does not weigh in favor of transfer.  *Hills v. Brinks, Inc.*, Civ. Action No. 07-4207, 2008 WL 243944 (E.D. La. Jan. 25, 2008).

4)  ALL OTHER PRACTICAL PROBLEMS THAT MAKE TRIAL OF A CASE EASY, EXPEDITIOUS AND INEXPENSIVE

Defendants argue that transfer of this matter, in effect, would moot their motion to dismiss for lack of personal jurisdiction.  The court agrees.  However, the undersigned has proposed resolving the motion to dismiss in favor of finding personal jurisdiction.  *See* discussion, *supra*.  Thus, in the absence of any other viable considerations, the court finds that

---

[9]  The court notes that "key witnesses who are employees of those seeking transfer are entitled to less weight in this analysis, simply because their employees can be compelled to give testimony at trial."  *Tegrity Contractors, Inc. v. Spectra Grp., Inc.*, Civ. Action No. 12-2555, 2013 WL 654924 (E.D. La. Feb. 21, 2013) (citations omitted).

this factor remains neutral.  *See Dymatize Enterprises, Inc., supra*; *Hills, supra*;

   b) <u>Public Interest Factors</u>

    1) ADMINISTRATIVE DIFFICULTIES FLOWING FROM COURT CONGESTION

  There is no evidence (or argument) that court congestion is any more of a factor in this

district and division than in the Northern District of Texas.  Thus, this factor remains neutral.

*Tegrity Contractors, Inc., supra*; *Hills, supra*.

    2) LOCAL INTEREST IN HAVING LOCALIZED INTERESTS DECIDED AT HOME

  This factor seeks to uphold the ideal that "[j]ury duty is a burden that ought not to be

imposed upon the people of a community which has no relation to the litigation."  *In re*

*Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) (*Volkswagen, I*) (citing *Gulf Oil Corp. v.*

*Gilbert*, 330 U.S. 501, 508-09, 67 S.Ct. 839 (1947)).  Here, however, both the transferor and

transferee courts have significant connections to the instant dispute:  Plaintiff resides here,

whereas Defendants reside in Texas.  Moreover, a significant portion of the dispute arises out of

events that occurred in this district and division.  Accordingly, this factor remains neutral.

    3 & 4) FAMILIARITY OF THE FORUM WITH THE LAW THAT WILL GOVERN THE
       CASE; AND THE AVOIDANCE OF UNNECESSARY PROBLEMS OF CONFLICT OF
       LAWS [OR IN] THE APPLICATION OF FOREIGN LAW

  Plaintiff's complaint includes claims arising under federal and Texas state law.  With

regard to the former claims, both this court and the proposed transferee court are equally capable

of applying the pertinent law.  *Dymatize Enterprises, Inc., supra*.  To the extent that this case will

require application of Texas law, this consideration nominally weighs in favor of transfer.  *Odom*

*v. Microsoft Corp.*, 596 F. Supp. 2d 995, 1003-04 (E.D. Tex. 2009) (citation omitted).  The

Supreme Court recently observed, however, that "federal judges routinely apply the law of a

13

State other than the State in which they sit." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, ___ U.S.___ , ___ S.Ct.___, 2013 WL 6231157 (Dec. 3, 2013).  Furthermore, as in *Atlantic Marine Const. Co., Inc.*, this court is not aware of "any exceptionally arcane features of Texas . . . law that are likely to defy comprehension by a federal judge sitting in [Louisiana]." *Id*.

If anything, the more challenging question would be whether Texas law should apply at all.  If this matter were transferred to Texas pursuant to § 1404(a), then the transferee court would be obliged to apply the choice of law rules of the transferor state.  *See Evangelical Lutheran Church in America v. Atlantic Mut. Ins. Co.*, 169 F.3d 947, 949 (5th Cir. 1999) (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 110 S.Ct. 1274 (1990).  Thus, transfer would not cure the choice of law issue.  In addition, this court likely has greater experience with Louisiana's conflicts of law provisions.  Therefore, this factor does not favor transfer.

Upon consideration of the relevant considerations the court is not persuaded that the Northern District of Texas is "clearly more convenient," than the instant forum.  Accordingly, Defendants have not demonstrated good cause for the proposed transfer.  28 U.S.C. § 1404(a).

## <u>Conclusion</u>

For the foregoing reasons,

IT IS RECOMMENDED that the motion to dismiss for lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(2), or alternatively to transfer pursuant to 28 U.S.C. § 1404(a) [doc. # 4] filed by Defendants Archie Smith, Big Arch Auto, and North Texas Auto Group, Inc. d/b/a Addison Auto Group be DENIED, in its entirety.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and F.R.C.P. Rule 72(b), the parties have

14

**fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 3rd day of December 2013.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE